

DEC 2 0 2005

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CIV 04-3005 |
| | \* | **2005 D.S.D. 24** |
| Plaintiff, | \* | |
| | \* | |
| -vs- | \* | MEMORANDUM OPINION |
| | \* | AND ORDER |
| MATHIS IMPLEMENT, INC., a South Dakota Corporation, formerly d/b/a OAK FOREST INDUSTRIES TRUST, a/k/a MATHIS IMPLEMENT TRUST; RICHARD MATHIS, LEONA MATHIS, TODD MATHIS, and SCOT MATHIS, as Co-Trustees of THE MATHIS FAMILY TRUST, a South Dakota Trust; and DOYLE D. MATHIS, ELDORA A. MATHIS, JAMES MATHIS, TOM MATHIS, ANN MARTINSON and LYNN LARSON, as Co-Trustees of THE MATHIS D. FAMILY TRUST, a South Dakota Trust, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

[¶1]   The United States of America ("plaintiff") filed this action against Mathis Implement, Inc., and the other defendants named above (collectively "defendants"). Plaintiff seeks to reduce its tax assessments to judgment, to foreclose federal tax liens on real property, and to obtain a judicial sale of real property, pursuant to 26 U.S.C. §§ 7401 and 7403. On March 9, 2005, the defendants filed a motion for summary judgment (Doc. 46). In response, the plaintiff filed its own motion for summary judgment (Doc. 53). Both of the motions are addressed below.

## FACTUAL BACKGROUND

[¶2]   Mathis Implement, Inc. ("Mathis Implement") is a South Dakota corporation which was incorporated on February 4, 1965, by brothers Richard Mathis ("Richard") and Doyle Mathis ("Doyle"). On June 1, 1985, the brothers purportedly transferred the assets of Mathis Implement to a trust in the name of Oak Forest Industries Trust ("Oak Forest").

[¶3] From on or about April, 1985, through August, 1990, Richard, his son Scot Mathis ("Scot"), and Doyle, with the help of others, unlawfully conspired to defraud the United States by impeding the collection of income taxes and Federal Insurance Contribution Act ("FICA") taxes.[1] This was made possible, in part, by the creation of a number of purported trusts on June 1, 1985. The fraud included a "cash wage" scheme in which certain employees of Mathis Implement were paid with cash without reporting said wages to the Internal Revenue Service ("IRS"). The defendants engaged in a fraudulent scheme to not withhold income taxes or FICA taxes from any of these cash wages. In addition, the defendants failed to report these cash payments as wages on the company books or Employer's Quarterly Federal Tax Return, Form 941, thus understating wages paid, income taxes due, and FICA taxes due. The defendants also executed a fraudulent scheme whereby IRS tax assessments and IRS liens and levies placed on defendants' business and personal property for non-payment of individual income taxes and corporate employment taxes were attempted to be defeated by the use of trusts, nominee bank accounts, asset liquidations, bogus offers of cash settlements, and delaying tactics in the form of lawsuits against the IRS.

[¶4] In this lawsuit, the plaintiff alleges that, for nineteen quarters beginning March 31, 1985, and ending September 30, 1989, defendants failed to pay all required Form 940 and 941 employment tax liabilities as to Mathis Implement. Plaintiff claims that defendants purportedly did business as Oak Forest during that time period and that the Oak Forest trust was a "sham trust" which was, in fact, the alter ego of Mathis Implement.

[¶5] Defendants dispute the characterization of Oak Forest as a sham trust. Defendants claim that they paid all 940 and 941 employment taxes attributable to the operations of Oak Forest for the quarters ending June 30, 1985, through September 30, 1989.

[¶6] Revenue Agent Kim Wind ("Wind") conducted an examination of Mathis Implement's operations and, on January 25, 1993, provided Mathis Implement with copies of her proposed

---

[1] Richard, Scot, and Doyle all pleaded guilty to Count I of a criminal indictment filed in CR 91-30034, charging this conspiracy. Defendant Leona Mathis ("Leona"), Richard's wife, was also named as a defendant in the original criminal indictment. Pursuant to the plea agreements as to Richard, Scot, and Doyle, all charges against Leona were dismissed upon the Court's acceptance of those agreements.

assessments on an IRS Form 2504. On February 3, 1993, and March 12, 1993, Richard responded to the Form 2504 with letters. These letters were replete with absolute nonsense. In the February 3, 1993, letter, Richard stated that he was returning the IRS Form 2504 "without dishonor." He went on to state that the "presentment is deficient." He cited various provisions of the Uniform Commercial Code which bear absolutely no relationship to the claimed taxes owed by Mathis Implement. The March 12, 1993, letter was similarly senseless, claiming that since the "charging documentation" to support the IRS's claim had not been provided, Richard was invalidating and returning the presentment pursuant to various UCC provisions.

[¶7] On November 1, 1993, a delegate of the Secretary of Treasury made assessments for the nineteen quarters against Mathis Implement for federal employment taxes plus statutory interest, penalties, and additions to tax. On April 7, 1994, and June 23, 1995, the IRS filed notices of federal tax lien against Mathis Implement with the Register of Deeds, Tripp County, South Dakota, and with the South Dakota Secretary of State. These notices were refiled on September 26, 2003.

[¶8] The amount of tax assessed, and the accrued amounts reflecting unpaid interest and penalties is claimed to total $1,156,995.91 as of April 30, 2005. Plaintiff claims that, despite proper notice and demand for payment, defendants have not paid the full amount of the assessed taxes. Plaintiff filed this suit on March 17, 2004. Plaintiff has produced certificates of assessments and payments to demonstrate that assessments have been made against defendants for unpaid employment taxes and tax liens have been filed based on those assessments. Plaintiff now seeks to foreclose its federal tax liens on two parcels of commercial property located at 1041 W. 2nd Street, Winner, South Dakota.

[¶9] Defendants claim, in support of their motion for a summary judgment and in opposition to the motion of plaintiff for a summary judgment: (1) the assessments were made against the wrong legal entity; (2) the assessments were made outside the statutory period; and (3) this action was commenced outside the statutory period.

## SUMMARY JUDGMENT STANDARDS

[¶10] The summary judgment standard is well known and has been set forth by this court in numerous opinions. *See* Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71

F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).

## QUESTIONS OF TIMELINESS

[¶11]  Two of the claims advanced by defendants concern the timing of the plaintiff's actions. First, defendant argues that the assessments made against them were made more than three years after the returns were filed and were therefore untimely under 26 U.S.C. § 6501, which provides:

> Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[¶12]  As the Certificates of Assessments and Payments show, the returns for all quarters except five (the quarters ending March 31, 1985, June 30, 1985, December 31, 1985, March 31,1986, and September 30, 1988) were filed on September 11, 1992. Because the assessment date of November 1, 1993, is within three years of this date, these assessments were timely under 26 U.S.C. § 6501.

[¶13]  The assessments for the other five quarters are timely based on exceptions to the general rule. These exceptions are contained in 26 U.S.C. §§ 6501(c)(1) and (2):

> (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.
> (2) Willful attempt to evade tax.--In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

[¶14]   Obviously, the defendants vigorously contest plaintiff's claim that the Oak Forest trust (and perhaps the other various trusts) was a sham trust. The defendants claim that it was a valid entity with a valid purpose. For reasons to be explained, this contention of defendants should be rejected as a matter of law. Defendants filed false returns and willfully attempted to evade taxes. There is no genuine issue of material fact as to such matters.

[¶15]   Defendants also claim that, even if the assessments were valid, this suit was commenced more than 10 years after the assessments were made and is therefore barred under the 10 year statute of limitations found in 26 U.S.C. 6502:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
>
> > (1) within 10 years after the assessment of the tax, or
> > (2) if--
> > > (A) there is an installment agreement between the taxpayer and the Secretary, prior to the date which is 90 days after the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer at the time the installment agreement was entered into; or
> > > (B) there is a release of levy under section 6343 after such 10-year period, prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before such release.
>
> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

[¶16]   Plaintiff's lawsuit to collect the tax assessments through a court proceeding was filed March 17, 2004. Plaintiff claims that the statute of limitations has not run continuously since the assessment date. No later than December 21, 2001, Mathis Implement submitted a request for a Collection Due Process (CDP) review to the IRS, pursuant to 26 U.S.C. § 6330. Plaintiff claims that this request automatically stopped the running of the statute of limitations, relying on the following:

> Except as provided in paragraph (2), if a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment) . . . shall be suspended for the period during which such hearing, and appeals therein, are pending.

26 U.S.C. § 6330(e)(1).

[¶17]   On May 20, 2002, IRS Appeals issued a Determination Letter ruling regarding this CDP request. On June 17, 2002, defendants or their proxies attempted to appeal this determination by filing a lawsuit in the United States District Court for the District of South Dakota. That suit was dismissed on March 18, 2003. Therefore, the clock began running again no sooner than March 18, 2003, at which point there would have been approximately 22 months remaining. This was the amount of time remaining as of December 21, 2001, when the CDP hearing was requested. This suit was brought on March 17, 2004, roughly 12 months after the CDP process was completely finished. There were ten months remaining in which to timely file suit.

[¶18]   The contentions of the defendants as to timeliness should be rejected. There are no genuine issues of material fact as to timeliness claims. Both the assessments and this action were timely.

## OTHER ISSUES

[¶19]   Defendants also claim that, during the quarters at issue, Mathis Implement was operated as Oak Forest Industries Trust, for which they have filed all returns and paid all taxes. Thus, defendants claim that the IRS has assessed the wrong party. The defendants' contention that the Oak Forest trust was legitimate and paid all taxes obviously runs contrary to the IRS position throughout the duration of this dispute that Oak Forest was a sham. During the quarters from 1985 to 1989, there is no question that Oak Forest filed returns and paid some amount of taxes. However, the IRS's position, adopted by plaintiff, is that the defendants are responsible for *additional* wages paid in cash and the additional FICA and FUTA taxes due on those wages. The word "additional" denotes that the assessments are for those wages above and beyond those reported on the various tax returns submitted by Oak Forest. Essentially, the plaintiff's position is that, although the returns were being filed and the taxes were being paid by Oak Forest, it was a sham trust that was an alter ego of Mathis Implement. That is why the additional taxes are

sought from Mathis Implement; in the view of the IRS and the plaintiff, it is the true entity at work here. "The government may collect the tax debts of a taxpayer from assets of the taxpayer's nominee, instrumentality, or alter ego." United States v. Scherping, 187 F.3d 796, 801 (8th Cir. 1999) (citing G.M. Leasing Corp. v.United States, 429 U.S. 338, 350-51 (1977)).

[¶20]   Plaintiff urges that the defendants' argument regarding the legitimacy of the Oak Forest trust is foreclosed by the fact that the principals of Mathis Implement, namely Richard, Doyle, and Scot, pled guilty to Count I of an indictment charging them with operating Mathis Implement as part of a scheme to defraud the government. This scheme was accomplished through a "cash wage scheme," which operated to reduce illegally the employment tax due from Mathis Implement. The indictment provides, in Count I:

> From on or about April, 1985 through August, 1990, the exact dates being unknown to the Grand Jury, in the District of South Dakota, RICHARD MATHIS, DOYLE MATHIS, SCOT MATHIS, LEONA MATHIS, and ALBERT KOUBA, defendants herein, did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree together and with other individuals both known and unknown to the Grand Jury to defraud the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes and Federal Insurance Contribution Act ("FICA") taxes.

The indictment then goes on to more clearly define the parties involved and the manner and means of the conspiracy. Plaintiff points to specific parts of the indictment. Of particular note are the following portions of Count I:

> In June 1985, the brothers purportedly transferred ownership of the company to a trust in the name of Oak Forest Industries d/b/a Mathis Implement.
> * * *
> On or about June 1, 1985, defendants RICHARD and DOYLE MATHIS fraudulently transferred a portion of the assets of Mathis Implement, Inc., to Oak Forest Industries for ten dollars.

[¶21]   The statements of facts,[2] which were signed by the defendants, provided that:

[¶22]        Beginning sometime in the first quarter of 1985, and continuing through the second quarter of 1989, the Defendants RICHARD

---

[2] The statements of facts which the Court reviewed were Doc. 89 in CR 91-30034-01, pertaining to Richard Mathis, and Doc. 86 in CR 91-30034-02, pertaining to Doyle Mathis.

7

> MATHIS, DOYLE MATHIS and SCOT MATHIS, conspired to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department, by, among other things, executing a scheme of paying cash to certain employees of Mathis Implement, Inc., without withholding income taxes or FICA taxes from any of the cash wages.
>
> At the direction of RICHARD MATHIS, the Mathis Implement, Inc., bookkeeper, Elysabeth Farley, paid cash to certain employees without recording their wages in the company payroll ledger or withholding any federal income taxes or FICA taxes. Farley was further instructed to destroy the weekly employee records after she had computed the regular and overtime hours for each employee that week. Farley was also instructed by RICHARD MATHIS to begin filing false Forms 941 with the IRS which failed to report the case wages paid to the employees.

[¶23]   "In pleading guilty, a defendant admits all of the factual allegations made in the indictment." United States v. White, 408 F.3d 399, 402 (8th Cir. 2005), O'Leary v. United States, 856 F.2d 1142, 1143 (8th Cir. 1988), and United States v. DiFonzo, 603 F.2d 1260, 1263 (7th Cir.1979), *cert. denied,* 444 U.S. 1018 (1980). There is no doubt that the defendants admitted in no uncertain terms that they transferred a portion of the assets of Mathis Implement, Inc. to Oak Forest. The wording above in the indictment indicates that this was done "fraudulently." One question is whether these admissions alone are sufficient to decide one of the issues presented in this case.

[¶24]   Plaintiff relies on the doctrines of res judicata and collateral estoppel, claiming the defendants have admitted that the Oak Forest trust was a part of the scheme to defraud the United States. District Courts are required to consider preclusion matters before reaching the merits of a claim. Peery v. Brakke, 826 F.2d 740, 744 n. 4 (8th Cir. 1987). The term "res judicata" is sometimes easily confused with "collateral estoppel." The two concepts, both of which may preclude a federal court from considering a claim, should perhaps be more precisely described as "issue preclusion" and "claim preclusion." Plough v. West Des Moines Community School District, 70 F.3d 512, 515 (8th Cir. 1995). *See* Gjellum v. City of Birmingham, Ala., 829 F.2d 1056, 1059 n. 3 (11th Cir. 1987).

> Issue preclusion, or collateral estoppel, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Claim preclusion, or res judicata, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."

Plough, 70 F.3d at 515 (*quoting* Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)) (citations omitted).

[¶25]   In addition, all the tests for collateral estoppel as set forth in SDDS, Inc. v. State, 1997 SD 114, ¶ 15, 569 N.W.2d 289, 294-95, are met here. "Numerous federal courts have held that a conviction for federal income tax evasion, either upon a plea of guilty, or upon a jury verdict of guilt, conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine of collateral estoppel." Gray v. Commissioner, 708 F.2d 243, 246 (6th Cir. 1983)(citing numerous cases). This legal principle is sometimes referred to as "judicial estoppel." Amtrust, Inc. v. Larson, 388 F.3d 594, 600-01 (8th Cir. 2004). *See also* Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996). I agree with all this reasoning and adopt it. Because of what took place before the District Court in the criminal case, defendants are estopped in this civil case.

[¶26]   "Because fraudulent intent is rarely established by direct evidence (although there is direct evidence as to Richard, Doyle, and Scot in the present case), it may be established through circumstantial evidence." McGraw v. C.I.R., 384 F.3d 965, 971 (8th Cir. 2004) (*citing* Scallen v. C.I.R., 877 F.2d 1364, 1370 (8th Cir. 1989)).

[¶27]   There is more to this matter, however, than the circumstantial evidence, the allegations of the indictment, and the guilty pleas to Count I. Richard, Doyle, and Scot, after pleading guilty and having been sentenced, filed an appeal to the United States Court of Appeals for the Eighth Circuit. *See* United States v. Mathis, 980 F.2d 496 (8th Cir. 1992). Their sentences were affirmed on appeal and it is clear what facts were before the Court of Appeals.

> The Mathises each signed a plea agreement and a statement of facts. In their statements, the Mathises admitted they conspired to pay cash wages to employees of Mathis Implement, Inc. without withholding income taxes or FICA taxes. The Mathises encouraged employees to participate in their scheme, told the

9

> bookkeeper to destroy weekly employee records and file false tax forms, and told employees to conceal their cash wages from the grand jury...

*Id.* at 497 (emphasis supplied).

[¶28] Thus, there was no mention of any trust or claim by the Mathises that the tax fraud was engaged in by anyone other than the Mathises and Mathis Implement, Inc. There was no claim that Mathis Implement no longer had any assets or was not directly involved in the fraud. Indeed, there were affirmative statements to the contrary, both before the District Court and before the Court of Appeals. The Court of Appeals noted that "[b]efore sentencing, the Mathises and <u>Mathis Implement, Inc.</u> paid the stipulated tax loss, civil penalties, and interest." <u>Mathis</u>, 980 F.2d at 497 (emphasis supplied). It is clear that Mathis Implement paid some of the very kinds of taxes (in the amount of $30,572) now claimed by them to have been never owed by Mathis Implement, Inc. "The district court imposed the criminal fines because Richard and Doyle conspired to impede and impair the Internal Revenue Service by evading <u>employment taxes owed by Mathis Implement, Inc.</u>" *Id.* (emphasis supplied). Although somewhat collateral, it can be said that these statements became the "law of the case." At the very least, the present defendants attempt to play fast and loose with the courts. They now attempt to dismount from the horses they rode in the criminal case, saddle entirely different horses, and ride off in the opposite direction. None of this should be permitted and it will not be. The self-serving affidavit of Richard has no credibility as he attempts to contradict what he admitted to and testified to in the criminal case. He will not be permitted to do what he now attempts to do. What is attempted here by the defendants would be further fraud directed now toward the United States District Court for the District of South Dakota.

[¶29] It is also of some interest that the opinion sets forth that Richard and Doyle had also not filed personal income tax returns or paid their personal taxes and that the tax court had imposed civil penalties. *Id.* These undisputed facts are further badges of fraud. Other badges of fraud consist of the various documents caused to be recorded by the defendants as described in Doc. 55-1. Defendants, acting on their own and without benefit of any competent legal advice, have attempted to cloud the title to the real estate, obviously to shield the same from levy. This should not be permitted and it will not be.

[¶30]   The defendants advance an argument that they are somehow protected because implement manufacturers had urged them to set up a plan "for succession" and perhaps to use trusts. This is a red herring, to say the least. They already had a corporation, an entity that does not die unless by state operation, i.e. approval of a requested corporate dissolution or involuntary corporate dissolution. There would have been no possible valid estate planning reason to transfer the assets of Mathis Implement, Inc., especially without any consideration, to a trust. A trust to hold the stock of a stockholder and all other personal assets (and thus avoid the expense and delays of probate) would be an estate planning tool but that is not what was done here as to the assets or stock of Mathis Implement, Inc. Manufacturers have no authority to authorize dealers to evade federal tax laws or to fail to pay taxes due. All these claims advanced by defendants, all taken to be true, have no legal merit and would serve as no defense in this action. There are no genuine material issues of fact as to these matters.

[¶31]   The claims of defendants that they established a trust or trusts for estate planning purposes would normally be assumed to be true. However, as already noted, the individual defendants managing the implement company (the sole corporate officers) while the sole owners of the stock in Mathis Implement, Inc., pled guilty, under oath in open court, to having engaged in a broad conspiracy to avoid federal taxes, including by having established various trusts, including at least some of the trusts who are named defendants in this action, and transferring assets to avoid the collection of taxes by the federal government. Estate planning would normally involve minimizing liabilities for federal estate taxes. Estate planning as a claimed motive is immaterial when it is conducted in a fraudulent manner with a plan to violate the law and avoid taxes legally due. The defendants do not claim to have sought or have obtained competent legal advice as to their plans. Instead, they dealt with a co-conspirator (later indicted and convicted by a jury) with the plan to avoid taxes legally due and to become due. There is no genuine issue of material fact that defendants intended to do just that. The badges of fraud here are undisputed and clear beyond a shadow of a doubt. The fact that more than one employer identification number was used is entirely immaterial. Such numbers are easily obtained without any direct involvement by the IRS. There are no genuine issues of material fact as to any of the claims of defendants.

[¶32]   The defendants also attack the United States for failing to indict them as to all criminal activities and all amounts of taxes evaded.  They state that the "distinction between the corporation and the trust made no difference to the government in the criminal case."  Why would it since the government was contending that the corporation and the trusts were one and the same?  On the other hand, such distinctions and claimed differences would or could have made a great deal of difference to the criminal defendants.  They would have had a possible defense to the criminal prosecution and failed to raise any such claims, probably because they would have been frivolous.  Defendants now state that "the indictment does not contain sufficient statements" to establish in the civil case the government's claimed alter ego theory.  They also claim that the amounts set forth in the indictment are different than the amounts in the civil assessments.  These are curious statements and a curious argument.  They cite no authority as to why, even if true, these claims would prevent the government from proceeding against the defendants for additional civil liabilities.  The claims of the defendants should be here rejected.  In addition, it was clearly alleged in Count I of the indictment in the criminal case that the defendants had used sham trusts and transferred property back and forth to evade taxes.  A broad conspiracy was alleged.  The individual defendants who at all times conducted the implement dealership business all entered pleas of guilty to Count I but now seek to launch collateral attacks.  Such attacks should be rejected.  Civil and criminal tax penalties, even those stemming from conduct which is related, are separate from each other and the government may impose both on the same person.  Helvering v. Mitchell, 303 U.S. 391, 397-99 (1938).  Similar claims by defendants were previously rejected as to Richard.  United States v. Mathis, 53 F.3d 335 (8th Cir. 1995) (Richard Mathis's plea agreement related only to criminal proceedings and did not bar additional civil assessments and collections).

[¶33]   We must not lose sight of other undisputed facts, however.  Only defendants Richard, Doyle, and Scot pled guilty in the criminal case.  The indictment was dismissed as against Leona Mathis based on a plea agreement with her husband, Richard.  Mathis Implement, Inc., Oak Forest Industries Trust, the Mathis Implement Trust, the Mathis Family Trust, the Mathis D. Family Trust, Eldora A. Mathis, James Mathis, Tom Mathis, Ann Martinson, and Lynn Larson were not indicted.  In this civil case, the government seeks to impose no personal liability against

any of the co-trustees of any trust. It seeks to foreclose the federal tax liens on the real estate and to have the real estate sold. Thus, it is legally immaterial what the co-trustees of the Mathis Family Trust, the so-called Mathis Implement Trust, or the so-called Mathis D. Family Trust may have done or not done in matters unrelated to the real property in question. As to the so-called Mathis Family Trust, Richard, Leona Mathis, Todd Mathis, and Scot are here sued only as co-trustees of The Mathis Family Trust. As to the so-called Mathis D. Family Trust, Doyle, Eldora A. Mathis, James Mathis, Tom Mathis, Ann Martinson, and Lynn Larson are sued here only as co-trustees of the Mathis D. Family Trust. All these claimed entities and people are sued only to foreclose any possibility of any of them claiming any legal interest in the described real property. They have no valid legal interest in the real property in question, namely Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 of Block 2, Brown's Addition, Winner City, Tripp County, S.D. All efforts of the defendants to encumber the described real property or to divest any part of the title of Mathis Implement, Inc. are void and of no legal effect. Any defendant other than Mathis Implement, Inc. claiming to own any portion of the real property would hold such interest only as the nominee of Mathis Implement, Inc. No such defendant will be permitted to interfere with the foreclosure and sale of the real estate.

[¶34] A related question is whether the fraudulent acts of Richard, Doyle, and Scot may be imputed to Mathis Implement. The corporation benefitted from the numerous acts of fraud committed by Richard, Doyle, and Scot. These persons were authorized agents of the corporation and were acting on behalf of the corporation. They intended to benefit their closely held corporation. These individuals so controlled the corporation and the trusts that the corporate entity in that narrow and limited sense was destroyed; the corporation as to the acts of fraud became the alter ego of Richard, Doyle, and Scot. Ruidoso Racing Association, Inc. v. C.I.R., 476 F.2d 502, 506 (10th Cir. 1973). "A corporation is not absolved from liability for the fraudulent acts of an agent by the fact that the agent derived personal benefit therefrom." Id. at 505-06. The wholesale fraud of these agents may be and should be imputed to the corporation. There are no genuine issues of material fact as to such matters.

[¶35] There are no genuine issues of material fact as to whether or not Oak Forest Industries Trust was a sham trust and also the alter ego of Mathis Implement, Inc. The family relationships

involved here as to the various trusts, the individuals, and Mathis Implement, Inc. were close and indistinguishable. The corporate assets were transferred for virtually no consideration. The trusts were used for fraudulent purposes. Thus, the requirements of Horton Dairy, Inc. v. United States, 986 F.2d 286, 289-90 (8th Cir. 1993), Loving Savior Church v. United States, 728 F.2d 1085, 1086 (8th Cir. 1984) (per curiam), and Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 638-39 n. 4 (8th Cir. 1975), are all met. In addition, as a matter of law, Oak Forest was a sham trust and the alter ego of Mathis Implement, Inc.

[¶36] Defendants also claim that plaintiff has not proved that the assessments are correct. Defendants have it backwards. It is their burden to prove the assessments are not correct. United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993). They submit no issues of fact as to whether or how the assessments are not correct. They raise no genuine issue of material fact to defeat the motion of the government. There is nothing to overcome the legal presumption that the assessments were correct. The motion of the government should be granted. The motion of the defendants should be denied.

[¶37] Now, therefore,

[¶38] IT IS ORDERED, as follows:

    (1) The motion for a summary judgment (Doc. 46) filed by the defendants is denied.

    (2) The motion for a summary judgment (Doc. 53) filed by the plaintiff is granted.

    (3) Plaintiff is directed to present an appropriate form of judgment to reduce the tax assessments to judgment, to foreclose the federal tax liens on the real property in question, and to obtain a judicial sale of the real property pursuant to 26 U.S.C.§§ 7401 and 7403.

    (4) The telephonic pretrial conference scheduled for January 13, 2006, is cancelled.

[¶39] Dated this 20th day of December, 2005.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY *Barbara J. Paepke*
          DEPUTY
(SEAL)

14